IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE | CASE NO. 20-02350 (ESL) |
| VILMA IVELISSE VICENTE ARIAS | CHAPTER 13 |
| Debtor | |
| VILMA IVELISSE VICENTE ARIAS | ADVERSARY NO. 22-00004 |
| Plaintiff | |
| vs. | |
| FRANKLIN CREDIT MANAGEMENT CORPORATION; BOSCO CREDIT X, LLC; VILMA ARIAS BONETA; JOSÉ RAMÓN CARRIÓN MORALES ON HIS OFFICIAL CAPACITY AS CHAPTER 13 TRUSTEE | |
| Defendant | |

## OPINION AND ORDER

This case is before the court upon Debtor-Plaintiff's *Motion for Reconsideration* (Lead Case, Docket No. 45) of the *Order* (Lead Case, Docket No. 43) granting Bosco Credit X, LLC's ("Bosco") *Motion for Order Pursuant to 11.U.S.C. § 105(a), and Fed. R. Civ. P. 60(B)(6), and Fed. R. Bankr. P. 9024 for Relief from Confirmation Order* (the "*Motion for Relief from Confirmation Order*", Lead Case, Docket No. 42), and the responses and replies thereto. Also pending is Bosco's partial *Motion to Dismiss Count 1 of the Amended Complaint Seeking to Avoid Mortgage Lien* (the "*Partial Motion to Dismiss*", Adv. Proc. Docket No. 85) for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and (h)(3) on ripeness grounds, and for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6), and the responses and replies thereto.

For the reasons discussed below, the *Motion for Reconsideration* (Lead Case, Docket No. 43) is DENIED. The *Partial Motion to Dismiss* (Adv. Proc. Docket No. 85) is GRANTED and, consequently, Count I of the *Amended Complaint* (Adv. Proc. Docket No. 40) is dismissed.

FACTUAL AND PROCEDURAL BACKGROUND

-1-

A.      The Bankruptcy Case, Bankr. Case No. 20-02350 (the "Lead Case")

1.      On June 18, 2020, Debtor-Plaintiff filed a voluntary petition under Chapter 13 of the Bankruptcy Code, Schedules, Statement of Current Monthly and Disposable Income Calculation, and Statement of Financial Affairs. See Lead Case, Docket No. 1.

2.      Debtor-Plaintiff disclosed "Franklin Credit Management" as having an unsecured claim of $378,384.18 on account of account no. 8600000020. See *Schedule E/F*, id., p. 29, item 4.5. The address provided for "Franklin Credit Management" is "PO Box 829629, Philadelphia, PA 19182-9629". Id., pp. 29, 66.

3.      Debtor-Plaintiff also disclosed a property in Brighton Country Club, Dorado (the "Property"), with a current value of $144,000, owned in "[f]ee simple" (*Schedule A/B*, id., p. 11, item 1.2; *Amended Schedule A/B*, Lead Case, Docket No. 22, p. 2, item 1.2), and securing a debt of $0.00 (*Schedule D*, Lead Case, Docket No. 1, p. 25, item 2.2). The Debtor-Plaintiff also claimed an exemption under 31 L.P.R.A. §§ 385a, 1851 *et seq.* (*Schedule C*, id., p. 22; *Amended Schedule C*, Lead Case, Docket No. 22, p. 7).

4.      Bosco is not included in Debtor-Plaintiff's master address list or schedules. See Lead Case, Docket Nos. 1, 22.

5.      On September 23, 2020, Debtor-Plaintiff filed a *Chapter 13 Plan dated 9/23/2020* (the "*Plan*", Lead Case, Docket No. 32) proposing the following treatment for unsecured claims: "[a]llowed nonpriority unsecured claims that are not separately classified will be paid pro rata … [from] [t]he funds remaining after disbursements have been made to all other creditors provided for in this plan[,] [or] [i]f the estate … were liquidated under chapter 7," "100% of the Allowed Unsecured Claims based on a yearly interest rate of 3.25%", whichever option "provid[es] the largest payment". Id., p. 3, § 5.1; p. 4, § 8.9. No individual treatment for "Franklin Credit Management" (or Bosco) is proposed.

6.      On October 19, 2020, the *Plan* was confirmed. See *Order Confirming Plan*, Lead Case, Docket No. 35.

7.      On June 6, 2023, Bosco filed the *Motion for Relief from Confirmation Order* (Lead Case, Docket No. 42), seeking relief from the *Order Confirming Plan* pursuant to Fed. R. Civ. P. 60(b)(6) on due process grounds, averring that the Debtor-Plaintiff "did not advise[] nor notif[y]

Bosco, or its servicer, that she had filed a petition for bankruptcy" (id., p. 1); Bosco has a claim secured by a mortgage presented and pending recordation in the PR Property Registry (id., p. 3, ¶ 6); Franklin Credit Management Corporation ("Franklin"), servicer for Bosco, "is registered with the National Creditor Registration Service Bankruptcy Noticing Center" with a designated preferred address in New Jersey (id., p. 3, ¶ 8); a communication was issued to Debtor-Plaintiff notifying that the address for Bosco, as the new holder of the mortgage loan, was in New Jersey and all communication should be directed to such address (id.); and no notice was received to such registered preferred address. Attached thereto are: is a Certified Translation of a *Certification of Real Estate Property* of Property No. 10284, located in Dorado, Puerto Rico, issued by the PR Property Registry (Exhibit A, Lead Case, Docket No. 42-1); a *Note* dated as of July 29, 2010, in the amount of $323,575.00, payable to Bosco (Exhibit B, Lead Case, Docket No. 42-2); a letter dated as of January 10, 2020, addressed to Debtor-Plaintiff from Franklin, titled "Re: Mortgage Transfer Disclosure" on account of a loan ending in 0020 (Exhibit C, Lead Case, Docket No. 42-3), which reads in pertinent part as follows:

> The address and telephone number for Bosco Credit X, LLC is: <u>c/o Franklin Credit Management Corporation, 101 Hudson Street, 24th Floor, Jersey City, NJ 07302</u>
> …
> As a reminder, your monthly payments should be sent directly to Franklin Credit Management Corporation ("Servicer"), at P.O. Box 829629, Philadelphia, PA 19182-9629. Franklin Credit Management Corporation, as servicer, has authority to act with regard to the administration of your mortgage loan. **All correspondence and any questions concerning your mortgage loan or this notice should be directed to Franklin Credit Management Corporation, 101 Hudson Street, 24th Floor, Jersey City, NJ 07302 and/or its Customer Service at 1-800-255-5897 between 8:00 a.m. and 8:00 p.m. (EST) Monday and Wednesday, 8:00 a.m. and 5:00 p.m. (EST) Tuesday, Thursday and Friday. This is a toll free number.**

Id. (boldface and underline original); the *Bankruptcy Noticing Center's Electronic Bankruptcy Noticing and Preferred Mailing Address Registration* for Franklin with an address in New Jersey (Exhibit D, Lead Case, Docket No. 42-4); the *Unsworn Statement Under Penalty of Perjury* of Ms. Gina D'Elia ("Ms. D'Elia"), Franklin's Bankruptcy Manager, averring that the Philadelphia address listed in Debtor-Plaintiff's schedules is a "payment lockbox address" to which only payments are received, that Franklin's noticing address is in New Jersey is the preferred address

for Franklin in the National Creditor Registration Service, and thus neither Franklin nor Bosco "received due notice" of Debtor-Plaintiff's bankruptcy case (Exhibit F, Lead Case, Docket No. 42-5); and page no. 3 of Debtor's *Schedule E/F* wherein "Franklin Credit Management" is disclosed as having an unsecured claim of $378,384.18 and an address in Philadelphia (Exhibit F, Lead Case, Docket No. 42-5, p. 3, item 4.5).

8.      The *Motion for Relief from Confirmation Order* was granted as unopposed on June 26, 2023. See *Order Granting Unopposed Motion*, Lead Case, Docket No. 43

9.      Thereafter, on June 30, 2023, Debtor-Plaintiff filed a *Motion For Reconsideration* (Lead Case, Docket No. 45) of the June 26, 2023 *Order*, pursuant to Fed. R. Civ. P. 59(e), averring that Bosco received actual and constructive notice of the bankruptcy case by and through its servicing agent, Franklin; that Bosco had been actively litigating its claims in the bankruptcy case for well over 18-months, by and through its servicing agent, Franklin; that Bosco does not argue that it did not receive actual notice of the bankruptcy case, or that the address were the notices were sent was incorrect, not an "active" address, or did not belong to Bosco, rather, Bosco argues that they were not noticed to their "preferred" notice address in New Jersey. Debtor-Plaintiff avers that notice was provided to the Philadelphia address, which is "reasonably calculated to provide notice to the creditor", and in fact, provided notice to Bosco (id., p. 10), and "a 'proper deliverable address,' even if not the creditor's 'preferred address' or the creditor's 'chosen address,' may be deemed sufficient" (id.).

10.      On June 14, 2023, Bosco filed an *Opposition to Motion for Reconsideration* (Lead Case, Docket No. 47), averring that:

> Bosco's MFR requested relief from the order of confirmation issued on October 19, 2020, at Dk. No. 35, on due process grounds, as it was not notified of the instant case until after the periods to seek remedies to appeal or revoke the confirmation order had expired. Specifically, Bosco submitted and unsworn statement under penalty of perjury in which an employee for its servicer, FCMC, stated that FCMC became aware of the bankruptcy filing in February 2022, when it was served with a copy of the related adversary proceeding 22-00004. By the time that FCMC and Bosco became aware of the captioned bankruptcy petition, 16 months had elapsed from the date the order of confirmation was issued.

> Debtor has not refuted the following facts alleged by BOSCO in its MFR that are relevant to adequate notice of the bankruptcy proceedings to Bosco and FCMC: a)

-4-

as of the date Debtor filed for bankruptcy in June 18, 2020, U.S. postal service in Philadelphia, where FCMC's lock box payment is located, was undergoing a crisis caused by the coronavirus pandemic and by multiple changes implemented the new Postmaster General, Louis DeJoy; b) Gina D'Elia's signed a statement under penalty of perjury stating that the notice of bankruptcy filing was not received by FCMC; c) Bosco was not included in the master address list or schedules in this case, d) five months prior to filing for bankruptcy debtor received written notice and became aware that Bosco was her creditor regarding the mortgage loan and that FCMC was the servicer for the loan; e) five months prior to filing for bankruptcy debtor received written notice and became aware of the postal addresses for noticing for both FCMC and Bosco. f) There is not one single notice to FCMC by this Court or by Debtor, to FCMC's registered preferred address in New Jersey. g) debtor's counsel has previously provided to this Court the correct preferred postal address of FCMC in other petitions. See, i. e. Case No. 18-07165 (EAG); h) The record of this case reflects lack of notice to creditor Bosco of the entire bankruptcy proceeding and lack of notice to FCMC for multiple documents, including the confirmation order, and i) All the multiple Chapter 13 Plans and documents filed by debtor were not notified to Bosco or Franklin.

Id., pp. 9-10. Additionally, Bosco distinguishes the cases listed by Debtor-Plaintiff in support of her argument that notices to a payment address constitute sufficient notice, and argues that Debtor-Plaintiff's bad faith permeates the captioned proceedings for the confirmed plan as well as other documents filed, specifically Lead Case Docket Nos. 21, 26, 28, 32 and 34, do not comply with LBR 9013-1(c), 9013-3(b). Further, Bosco argues that:

Bosco is entitled to relief from the Confirmation Order pursuant to Rule 60(b)(6) and Section 105 of the Bankruptcy Code. Under the circumstances stated hereinabove, neither FCMC as servicer, nor Bosco, could have timely filed a proof of claim or prevent the confirmation of Debtor's plan. None of the procedural or notice errors that occurred in the bankruptcy proceedings can be attributed to Bosco or FCMC. FCMC took steps to receive notice of all proceedings by registering with the National Creditor Registration Service Bankruptcy Noticing Center and designating its preferred address for notices, to no avail. There is no doubt that the lack of knowledge of the captioned proceedings has caused great harm to Bosco and setting aside the order issued at Dk. No. 43 will prejudice Bosco.

…

No grounds exist to support a motion filed by Debtor, as none of the elements to grant such relief pursuant to Rule 59 of the FRCP is present. The Court did not commit any manifest error in rendering its decision, as the facts are supported by the Court's record and the documents submitted by Bosco, debtor is not presenting newly discovered evidence, which was not previously available; no change in controlling law has occurred that has been brought forward by Debtor, and no manifest injustice needs to be prevented. It must be noted, that a motion pursuant to Rule 59 should be granted sparingly by the Court, and Debtor has failed to meet

the standard for granting such remedy. Therefore, Debtor's motion for reconsideration of this Court's order at Dk. No. 43 fails to comply with the requirements to grant such a redress pursuant to Rule 59(e) and cannot be granted absent highly unusual circumstances, and only if the Court is presented with newly discovered evidence, committed a clear error, or if there is an intervening change in the controlling law. […] None of the foregoing elements are present in debtor's request, as she failed to explain the presence of unusual circumstances which warrant such redress; has not presented new evidence, and did not bring forward a change in controlling law, nor a clear error from the Court.

Id., pp. 14-15.

11. An evidentiary hearing to consider Debtor-Plaintiff's motion for reconsideration and Bosco's opposition was scheduled for October 26, 2023, at 10:00 AM. See *Order and Notice*, Lead Case, Docket No. 48. The parties were ordered to file proposed findings of fact and conclusions of law seven (7) days prior to the hearing. Id.

12. On October 19, 2023, Bosco filed a *Motion in Compliance with Court Order to Submit Bosco's Proposed Statements of Fact and Conclusions of Law* ("*Bosco's Pre-Trial Report*", Lead Case, Docket No. 52). Attached thereto are: the *Bankruptcy Noticing Center's Electronic Bankruptcy Noticing and Preferred Mailing Address Registration* for Franklin with an address in New Jersey (Exhibit 1, Lead Case, Docket No. 52-1); the *Unsworn Statement Under Penalty of Perjury* of Ms. D'Elia (Exhibit 2, Lead Case, Docket No. 52-2, pp. 1-2); page no. 3 of Debtor's *Schedule E/F* wherein "Franklin Credit Management" is disclosed as having an unsecured claim of $378,384.18 and an address in Philadelphia (Exhibit 2, Lead Case, Docket No. 52-2, p. 3, item 4.5); and the letter dated as of January 10, 2020, addressed to Debtor-Plaintiff from Franklin, titled "Re: Mortgage Transfer Disclosure" on account of a loan ending in 0020 (Exhibit 3, Lead Case, Docket No. 52-3).

13. In *Bosco's Pre-Trial Report*, Bosco avers that Franklin is registered with the National Creditor Registration Service Bankruptcy Noticing Center with a designated preferred address in New Jersey; that the address used by the Debtor-Plaintiff in her petition and notices is an address in Philadelphia; that Franklin became aware of Debtor's bankruptcy petition upon receipt of summons in the adversary proceeding; and that prior to notice thereof "no other notice by mail or by any other means has been received by Franklin" in connection with the bankruptcy case; and distinguishes the facts of this case from the caselaw cited by the Debtor-Plaintiff.

14. On October 20, 2023, Debtor-Plaintiff filed a *Proposed Findings of Fact and Conclusions of Law* ("*Debtor's Pre-Trial Report*", Lead Case, Docket No. 53)[1]. Attached thereto are: a letter dated as of December 9, 2021, addressed to Samuel A. Figueroa-Martinez from Franklin identifying its regular address and a PO Box in Philadelphia, allegedly filed in Case No. 21-03542 (Exhibit 1, Lead Case, Docket No. 53-1); a table allegedly listing bankruptcy cases where Franklin received a Bankruptcy Case Notice, filed a proof of claim and appeared in the months prior to and after the instant case (Exhibit 2, Lead Case, Docket No. 53-2); a Certificate of Service filed in Adv. Proc. No. 22-00004, Docket No. 5 (Exhibit 3); internal communication from Debtor's counsel to his staff regarding his daughter's health and need for an extension of time in this and other cases (Exhibit 6, 7, 8, 9 and 10, Lead Case, Docket No. 53-4, 53-5, 53-6, 53-7, 53-8). Exhibit 4 and Exhibit 5, two hospital certifications, are identified and not attached.

15. In *Debtor's Pre-Trial Report*, Debtor-Plaintiff avers that good cause exists to set aside the *Order* because counsel was undergoing a family medical emergency when the deadline to respond lapsed; relief from the confirmation order under Fed. R. Civ. P. 60 is not allowed pursuant to Fed. R. Bank. P. 9024, which states that "[Fed. R. Civ. P. 60] applies in cases under the Code except … a complaint to revoke an order confirming a plan may be filed only within the time allowed by §1144, §1230, or §1330"; the relief sought by Bosco is allowed only under 11 U.S.C. § 1330 and within 180 days from the entry a confirmation order (Lead Case, Docket No. 53, p. 15), making Franklin's request untimely; Franklin failed to plead fraud, which "is the only ground for relief available" (id., p. 16); and an adversary proceeding was not filed pursuant to 11 U.S.C. § 1330(a), Fed. R. Bank. P. 7001(4) and 9024. Debtor-Plaintiff further avers that the payment address in Philadelphia is also Franklin's regular address, to which it has received notice in prior cases; that Bosco's demand for service at its "preferred addressed for notices" is frivolous; that a " 'proper deliverable address,' even if not the creditor's 'preferred address' or the creditor's 'chosen address,' may be deemed sufficient" (id., p. 18, citing In re Anderson, 2009 WL 4840871 (Bankr. Mass. 2009)); that the Philadelphia address is an address "reasonable calculated to provide notice to the creditor" (id.); and that Bosco has never argued that it did not receive the notices

---

[1] On October 23, 2023, Debtor-Plaintiff filed a *Motion to Leave to File Documents in the Spanish Language* (Lead Case, Docket No. 55) in connection with Lead Case, Docket No. 53.

mailed by the Debtor-Plaintiff and the Bankruptcy Court to Bosco's payment address. Lastly, Debtor-Plaintiff avers that the confirmation of the plan is binding, and that the *res judicata* effect of confirmation may be eliminated only if confirmation is revoked.

16. On October 23, 2023, Bosco filed a *Motion for Leave to File Two Additional Exhibits* (Lead Case, Docket No. 56), which Debtor-Plaintiff opposed (Lead Case, Docket No. 57) and Bosco replied (Lead Case, Docket No. 58), submitting a newspaper article from the New York Times titled "Postal Crisis Ripples Across Nation as Election Looms" dated August 20, 2020 (Exhibit A, Lead Case, Docket No. 56-1) and a newspaper article from the Philadelphia Inquirer titled "Mail delays are frustrating Philly residents, and a short-staffed Postal Service is struggling to keep up", dated August 2, 2020 (Exhibit B, Lead Case, Docket No. 56-2).

17. At a hearing held on October 26, 2023, to consider Debtor-Plaintiff's motion for reconsideration and Bosco's opposition, Bosco presented Ms. D'Elia, Franklin's Bankruptcy Manager, as a witness, who testified that Franklin did not receive notice of the bankruptcy proceeding until the filing of the adversary proceeding (*Audio File of October 26, 2023, Hearing* at 51:30 to 51:35 and 57:20-57:34, Lead Case, Docket No. 59); that notice was not received to the Philadelphia lockbox address (id., at 51:56 to 52:02); that the Philadelphia address is a lockbox address center for payments, and when correspondence is received to such address there is a process by which PNC, an entity separate from Franklin that is responsible for the management of the lockbox, forwards such correspondence to Franklin's mail room, Franklin then sorts the correspondence to the corresponding department (id., at 52:10-52:42); thereafter, Ms. D'Elia is responsible for distributing or referring bankruptcy notices to her team or to their attorney's, and changing the account status to bankruptcy (id., at 55:10 to 57:20). When asked if she has an explanation as to why Franklin did not receive notice in this case when notice was received in other cases, Ms. D'Elia answered that they (Franklin) not only receive paper notices of bankruptcy filings, but they also receive notice via attorneys and a daily data scrub completed by lexisnexis that "captures" bankruptcy filings (id., at 1:00:00 to 1:02:36). Ms. D'Elia also stated that this case has made Franklin revise their bankruptcy notice methodologies and that from the date they received noticed of the adversary proceeding forward, they switched their lexisnexis notice methodology to include social security numbers (id., at 1:05:00 to 1:05:44). Ms. D'Elia also stated

that her only explanation for not receiving a notice is that if a notice was mailed, it was not received in the lockbox (id., at 1:02:36 to 1:02:49). Debtor-Plaintiff's counsel had an opportunity to cross-examine the witness.

18. The *Minutes of Hearing Held on October 26, 2023* (Lead Case, Docket No. 71) read as follows:

> The court states that notice was given, but it appears in the schedules and in the certificate of notices, that it was given to a postal address which, according to Boston and Franklin, is an address to which the payments must be made, not the address of the servicing agent.
>
> The Court also advanced that the issue of how a party invalidates a lien in bankruptcy has to be a specific action taken and no action was taken prior to the confirmation of the Chapter 13 plan. A matter which may lend support to the merits of the motion filed by Bosco.
>
> Bosco presented Ms. Gina Delia, Franklin Credit Management's Bankruptcy Manager, as a witness, as well as documentary evidence. The Debtor submitted documentary evidence.
>
> CONCLUSION
>
> The court granted Bosco twenty-one (21) days to supplement its position in writing and granted the Debtor twenty-one (21) days thereafter to reply. The matter will then be deemed submitted.

Id., p. 2, lines 8-20. In addition to the forgoing, the court advanced that it would consider only the facts as they are in this case, not as they are in other cases, and thus it would not accept exhibits or arguments pertaining to other cases, including whether the payment address was used for purposes other than payment in other proceedings. See *Audio File of October 26, 2023, Hearing* at 1:21:29 to 1:23-10, Lead Case, Docket No. 59. Further, the court advanced that based on the reasons given by counsel, it found excusable neglect, and would address the matter on the merits, that is, whether Bosco was given proper adequate notice and what is the proper method to invalidate a lien, which may relate to the adversary proceeding. See id., at 1:23:40 to1:24:14.

19. On November 11, 2023, in compliance with the minute order, Bosco filed an *Opposition to New Legal Argument* (Lead Case, Docket No. 60), averring that it could not have filed an adversary proceeding within 180 days of the confirmation order because it became aware of the bankruptcy proceedings through a notice of the filing of Adv. Proc. No. 22-00004 "in the

year 2022". Consequently, Bosco argues that it was deprived of the opportunity to file an adversary proceeding to seek the revocation of the plan within the 180-day period.

20.  On December 1, 2023, the Debtor-Plaintiff filed a *Reply to Bosco's Supplemental Brief* (Lead Case, Docket No. 63), averring among other things that:

> By Bosco's own admission, since February/March of 2022 Bosco has had **ACTUAL** knowledge of the Bankruptcy Case and of the Confirmed Plan.[3] *See*, Dk. #60, at \*3 ("Bosco became aware of the captioned proceedings through a notice of the filing of the related adversary proceeding #22- 00004 in the year 2022."). Therefore, it is uncontested that Bosco slept on their rights[4] for at least 16-months; *to wit*, that notwithstanding having acquired actual knowledge of the bankruptcy proceeding in February/March of 2022, Bosco did not file the present Motion To Vacate the Confirmed Plan until June 6, 2023[5] (the "Motion to Vacate"). *See*, Dk. #42.

Id., p. 2 (emphasis original, footnotes omitted). The Debtor-Plaintiff further argues that "Bosco has failed to vest this Honorable Court with subject matter jurisdiction" because "Bosco's Motion to Vacate was filed after the 190-day bar date which is imposed by … 11 U.S.C. § 1330(a)", and Fed. R. Bank. P. 9024 specifically provides that a pleading to revoke a Chapter 13 confirmation order may only be commenced via "a complaint." Id., p. 3. Thus, Debtor-Plaintiff argues that the Motion to Vacate is not properly before the court and must be dismissed, outright, as a matter of law under Fed. R. Civ. P. 12(b)(1).

21.  On December 8, 2023, Bosco filed a *Sur-Reply to Debtor's Reply at Dk. 63* (Lead Case, Docket No. 66)[2], replying to certain arguments raised by the Debtor-Plaintiff regarding a request for judicial notice of a case filed in the Middle District of Florida that is not related to these proceedings.

B.  The Adversary Proceeding, Adv. Proc. No. 22-00004

22.  On January 25, 2022, Debtor-Plaintiff filed a *Complaint* (Adv. Proc. Docket No. 1).

23.  On August 23, 2022, after various procedural events[3], Debtor-Plaintiff sought and was granted leave (Adv. Proc. Docket Nos. 39, 59) to file an *Amended Complaint* (Adv. Proc.

---

[2]Bosco sought and was granted leave to file the sur-reply. See Lead Case, Docket Nos. 68, 69.

[3] The various procedural events include the filing of a *Motion to Dismiss* (Adv. Proc. Docket No. 12) by Franklin, *Motion for Leave to File Amended Complaint* (Adv. Proc. Docket No. 25), Debtor-Plaintiff's *Opposition to Motion to*

-10-

Docket No. 40) asserting four (4) causes of action against Franklin, Arias Boneta, Bosco, and the Chapter 13 Trustee. First, that the Security Agreement and the Purchase Deed were originally presented in the PR Property Registry, notified as containing defects by the Registrar, subsequently withdrawn and presented for a second time, uncorrected. Because the recordation is 'defective', and may not be corrected on account of the automatic stay, the Debtor-Plaintiff seeks a declaratory judgment as to the validity of Bosco's lien over the Property, which they aver is not a duly perfect lien (id., p. 9). Second, that Franklin has made "false, misleading, and deceptive representations in the multiple monthly statements and collection letters" (id., p. 12, ¶ 69) "[s]ince January 26, 2021" (id., p. 12, ¶ 71) in violation of Section 1692e(2)(A), (5) and (10) of the FDCPA, 11 U.S.C. § 1692e(2)(A), (5), (10). Third, that Franklin, in issuing the aforementioned monthly statements and collection letters and has communicated directly with Debtor-Plaintiff despite the latter being represented by counsel in violation of Section1692c(a)(2) of the FDCPA, 15 U.S.C. § 1692c(a)(2). And Fourth, that Bosco "gave instructions, directed, and authorized" Franklin to issue the aforementioned monthly statements and collection letters, and is "responsible for any and all liability created by Franklin's acts" in violation of 11 U.S.C. § 1692e (id., p. 19, ¶ 110). As a result of the forgoing allegations, Debtor-Plaintiff seeks the cancellation and avoidance of the Security Agreement and the Purchase Deed and an order directing the PR Property Registry to delete their presentation, and an award of statutory damages, costs and attorneys' fees pursuant to 15 U.S.C. § 1692k on account of Counts II, III, and IV.

24. On March 2, 2023, Debtor-Plaintiff filed a *Motion Requesting Summons* be served on Bosco (Adv. Proc. Docket No. 66), which was granted (Adv. Proc. Docket No. 69).

25. On March 2, 2023, Franklin filed an *Answer to Amended Complaint at Dk. No. 40* (Adv. Proc. Docket No. 68).

---

*Dismiss* (Adv. Proc. Docket No. 26), Franklin's *Opposition to Plaintiff's Request to Amend Complaint* (Adv. Proc. Docket No. 32) and *Reply to Opposition to Motion to Dismiss* (Adv. Proc. Docket No. 33), Debtor-Plaintiff's *Response to Court Order (Dk. #34 & 37) and Reply to Defendant's Opposition to Plaintiff's Request to File Amended Complaint* (Adv. Proc. Docket No. 41), Franklin's *Sur-Reply to Plaintiff's Response Regarding Leave to Amend Complaint and Opposition to Allegation of Mootness of Motion to Dismiss at Dk. No. 12 in Compliance with Order* (Adv. Proc. Docket No. 46), Debtor's *Answer to Court Order (Dk. #48)* (Adv. Proc. Docket No. 53), and Franklin's *Reply to Answer to Court Order at Dk. No. 53* (Adv. Proc. Docket No. 56). See also *Opinion and Order* (Adv. Proc. Docket No. 59), Franklin Credit's *Motion to Alter or Amend Opinion and Order* (Adv. Proc. Docket No. 61), and *Order Granting Unopposed Motion* (Adv. Proc. Docket No. 74).

26.     Also on March 3, 2023, Summons for Bosco were issued (Adv. Proc. Docket No. 70).

27.     On May 30, 2023, Bosco filed the *Partial Motion to Dismiss* (Adv. Proc. Docket No. 85), averring that Count 1 of the *Amended Complaint* should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and (h)(3) on ripeness grounds, and for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6). Bosco also avers that should the court determine it has subject matter jurisdiction and the matter is ripe for adjudication, it should abstain under the Younger abstention doctrine.

28.     On August 4, 2023, Debtor-Plaintiff filed an *Opposition to Motion to Dismiss Count 1* (the "*Opposition*", Adv. Proc. Docket No. 100).

29.     On August 18, 2023, Bosco filed a *Reply to Plaintiff's Opposition to Bosco'[s] Motion to Dismiss* (the "*Reply*", Adv. Proc. Docket No. 107).

30.     On August 31, 2023, Debtor-Plaintiff filed a *Sur-Reply to Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss Count I of Plaintiff's Complaint* (the "*Sur-Reply*", Adv. Proc. Docket No. 111).

## LEGAL ISSUES

The issues before this court are: (i) whether Bosco received due notice of the bankruptcy filing and, consequently, (ii) whether relief from the confirmation order is appropriate. Additionally, there is a dispute as to whether Bosco has a valid lien over the Property because the Security Agreement and the Purchase Deed presented in the PR Property Registry were notified as containing defects by the Registrar, subsequently withdrawn, and presented for a second time uncorrected. In connection therewith, the parties contest whether this court has subject matter jurisdiction, whether the contested issue is ripe for adjudication, and whether this court should abstain.

## POSITION OF THE PARTIES

I.     Issue of Notice

Bosco argues that Franklin, servicer for Bosco, "is registered with the National Creditor Registration Service Bankruptcy Noticing Center" with a designated preferred address in New Jersey (Lead Case, Docket No. 42 p. 3, ¶ 8); that Debtor-Plaintiff "did not advise[] nor notif[y]

Bosco, or its servicer, that she had filed a petition for bankruptcy" (id., p. 1); that the Philadelphia address is a "payment lockbox" address to which only payments are received, and that Franklin's preferred noticing address is in New Jersey. Ms. D'Elia, Franklin's Bankruptcy Manager, testified that Franklin did not receive notice of the bankruptcy proceeding to either the Philadelphia or New Jersey address until the filing of the adversary proceeding. Thus, Bosco argues, relief from the *Order Confirming Plan* is appropriate on due process grounds.

Debtor-Plaintiff contends that Bosco received actual and constructive notice of the bankruptcy case by and through its servicing agent, Franklin; and that notice to the Philadelphia address was "reasonably calculated to provide notice to the creditor", and in fact, provided notice to Bosco (Lead Case, Docket No. 45).

II.     Validity of Bosco's Lien

Debtor-Plaintiff avers that the Security Agreement and the Purchase Deed are 'defective' and may not be corrected on account of the automatic stay. As such, she seeks (i) a declaratory judgment as to the validity of Bosco's lien over the Property, which she avers is not a duly perfected lien (Adv. Proc. Docket No. 40, p. 9), (ii) the cancellation and avoidance of the Security Agreement and the Purchase Deed, and (iii) an order directing the PR Property Registry to delete their presentation.

In its *Partial Motion to Dismiss* (Adv. Proc. Docket No. 85), Bosco avers that Count 1 should be dismissed for lack of subject matter jurisdiction on ripeness grounds under Fed. R. Civ. P. 12(b)(1) and (h)(3) because Debtor-Plaintiff filed this case to "sidestep the recording process" and Act 210-2015, known as the Real Property Registry Act of the Commonwealth of Puerto Rico, 30 L.P.R.A. § 6001 *et seq.* (id., pp. 1-2). Bosco analyzes each prong of the two ripeness prongs, to wit: (i) whether the issues are fit for judicial decisions, and (ii) whether withholding a decision will cause hardship on the parties (see id., p. 8). With respect to the fitness prong, Bosco avers that "the defects that … prevent … recordation … are not identified in any of the allegations" (id., p. 10), the Registrar has "sole and exclusive jurisdiction regarding evaluating filed and pending documents at the Registry of Property" (id.), "Plaintiff's requests a remedy that depends on facts not sufficiently developed or in facts[] which have yet to occur, and in legal opinions and conclusions proffered as facts" (id.), "a registered title takes effect and affects third parties from

its registration, the date of presentation will be the determining moment for this registration to be effective, since registration in the Registry produces its effects retroactively from the specific moment of the presentation" (id.), "until … notification of defect is issued and the party in interest fails to correct it, the rights of such party under state law continue to be effective" (id., p. 11), and "both the Deed of Purchase and Deed of Mortgage[] will be evaluated by the Registrar, and if found defective, a notice of defect will be issued, and the Defendant will have 60-days from such notice to correct said deficiencies … as permitted under the Registry Act and the Bankruptcy Code", specially 11 U.S.C. §§ 362(b)(3), 546(b)(1)(A) (id., pp. 11-12). With respect to the hardship prong, Bosco avers that "[a]t this juncture of the Registry recording proceeding, Debtor-Plaintiff has suffered no harm, there is no present detriment, and a speculative possibility of future injury (that the Registrar might notify the Mortgage, and the Defendant is allegedly precluded from curing the notice), does not constitute hardship" (id., p. 15), and

> withholding judicial review until completion of recording process is a condition for the Plaintiff to file its judicial action as per the Registry Act and this imposes no hardship on the parties. The Court therefore should conclude that where the recording process by the Registrar is a condition precedent to litigation which has not yet been satisfied but may be satisfied in the future, the merits of the underlying claim are not ripe for judicial review. Plaintiff's case is not ripe for adjudication because it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. Thus, dismissal of Count I of the amended Complaint is required because is not ripe for judicial review.

Id., p. 16.

Bosco also avers that Count 1 should be dismissed under Fed. R. Civ. P. 12(b)(6) because "[t]he entire Complaint is framed by Plaintiff's conclusory allegation that … there are defects that prevent the post-petition perfection of the Defendant's interest in property into a valid recordable lien over the estate's property and, Defendant is precluded by the Bankruptcy Code's automatic stay from correcting a future Registrar of the Property notice of defects as to Bosco's duly filed deed of mortgage." Id., p. 17. "The omission of well pleaded facts to support her legal conclusions warrants the dismissal of Count 1. The alleged defects that prevent the recordation of the Deed of Mortgage and Deed of Purchase are not identified in any of the allegations of the complaint. The

-14-

allegations do not provide specific facts, making it unreasonable to determine that both Deeds are defective and cannot be recorded in the Registry of Property". Id.

Bosco also contends that "Count 1 cannot be granted because the Court is precluded from making a determination of defects as to the Deeds of Purchase and Mortgage because they are both pending and the administrative process at the Registry of the Property has not concluded." Id., p. 20. Bosco thus avers that if the court were to determine that it has subject matter jurisdiction and the matter is ripe for adjudication, it should abstain from hearing Count 1 as it would not only be interfering in a decision that should be taken by the Registrar, but it would also decide contrary to what is prescribed under state law in the Registry Act. To that end, Bosco argues for the application of the Younger abstention doctrine.

Bosco avers that dismissal is required because all three elements of the Younger abstention doctrine are present. First, that the Registrar has an "adjudicative function as that of a judge (quasijudicial) that requires him/her to evaluate and analyze documents and make judgment regarding those documents before recording them in the books and records of the Registry" (Adv. Proc. Docket No. 85, p. 21); Second, that the recordation process at the PR Property Registry implicates an important state interest; and Third, that federal courts are " 'obliged to presume that state courts are fully capable of safeguarding federal constitutional rights,' including the right to due process" (id., p. 22).

In its *Opposition*, Debtor-Plaintiff avers that the bankruptcy court's "exclusive jurisdiction" is grounded on the fact that the Property is property of the estate and the *Order Confirming Plan* states that "[a]ll property of the estate shall remain within the exclusive jurisdiction of the Bankruptcy Court." Adv. Proc. Docket No. 100, pp. 5-6, citing *Order Confirming Plan* (Lead Case, Docket No. 35, p. 1, ¶ 5).

Debtor-Plaintiff avers that she is duty bound to challenge the allegedly defective deeds via adversary proceeding pursuant to Fed. R. Bank. P. 7001(2). Thus, the court has jurisdiction over this contested matter. Debtor-Plaintiff also argues that "the Younger Doctrine does not apply to the Commonwealth of Puerto Rico" (Adv. Proc. Docket No. 100, p. 15), and none of the three requirements of the Younger doctrine, which are conditions precedent to its application, exist in this case. Debtor-Plaintiff's arguments are as follows. First, no "proceeding" commenced is

pending in the Commonwealth of Puerto Rico, the registrar is not a judge, and the Registrar does not declare the existence or inexistence of a doubtful title. Second, Bosco's deed is not an unsettled issue of state law or a matter of substantial importance of state law policy. Third, no opportunity to litigate federal claims exists in state court because the Property is property of the estate, and both the automatic stay and the Order Confirming Plan prevent dismemberment of a debtor's assets by individual creditors levying on the property other than in accordance with the confirmed plan or other order of the Bankruptcy Court (Adv. Proc. Docket No. 100, p. 20).

In the event Debtor-Plaintiff's allegations are not sufficiently or adequately polkaed, Debtor-Plaintiff requests leave to amend the complaint for a *third* time under Fed. R. Civ. P. 15. See Docket No. 100, p. 21.

In its *Reply*, Bosco avers that Ortiz Betancourt, *infra*, cited by the Debtor-Plaintiff, is not dispositive because the deed at issue in that case was recorded prior to evaluation by the Registrar; the Trustee rebutted the validity of the recorded lien, *alleging specific defects* (property description and lot number in the deed was different to that of the registry); the rectification deed presented to correct error was not executed by the debtor; and, the Trustee submitted evidence in support of its allegations. In contrast, the Deed of Mortgage and Deed of Purchase before the court have only been presented to the Registry, and the Debtor-Plaintiff has failed to plead specific facts to make determine if in fact the deeds are defective. See Docket No. 107, p. 4. Bosco also avers that all requirements for the exception of the automatic stay to correct any notification from the Registrar exist. See id., p. 5. Lastly, Bosco opposes Debtor-Plaintiff's request to amend her complaint for a *third* time, arguing that Debtor-Plaintiff filed her bankruptcy petition over three years ago, at which time she listed Bosco's claim as unsecured, thus she has had "ample opportunity to gather specific facts related to the two pending deeds". Id., p. 5.

In her *Sur-Reply*, Debtor-Plaintiff argues that Bosco's request for dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) fails as a result of Bosco's acknowledgment that the Bankruptcy Court retains exclusive jurisdiction over the bankruptcy estate. See Docket No. 111, p. 3, n. 2. She also argues that the court may not look beyond the four corners of the complaint. Thus, Bosco's argument that Ortiz Betancourt, infra, is not dispositive

-16-

because the facts are different, is a misstatement of law. See id., p. 5. Lastly, Debtor-Plaintiff argues that under Ashcroft, *infra*, detailed factual allegations are not a prerequisite. See id.

APPLICABLE LAW AND ANALYSIS

(A)      Motion for Reconsideration Standard under Fed. R. Civ. P. 59(e), 60(b)

Motions for reconsideration "are not recognized by the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure in *haec verba*." In re Mujica, 470 B.R. 251, 253 (Bankr. D.P.R. 2012), *aff'd*, 492 B.R. 355 (D.P.R. 2013). See also Lavespere v. Niagara Mach. & Tool Works Inc., 910 F.2d 167, 173 (5th Cir. 1990), *cert. denied* 510 U.S. 859 (1993), abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069, 1075–76 (5th Cir. 1994); In re Pabon Rodriguez, 233 B.R. 212, 218 (Bankr. D.P.R. 1999), *aff'd*, 2000 WL 35916017 (B.A.P. 1st Cir. 2000), *aff'd*, 17 F. App'x 5 (1st Cir. 2001), citing Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991); Portugues–Santa v. B. Fernandez Hermanos, Inc., 614 F.Supp.2d 221, 225 (D.P.R. 2009); In re Martinez, 2013 WL 3808076, at *4 (Bankr. D.P.R. 2013); In re Acosta, 497 B.R. 25, 31 (Bankr. D.P.R. 2013). Rather, federal courts have considered motions so denominated as either a motion to "alter or amend" under Fed. R. Civ. P. 59(e) or a motion for relief of judgment or order under Fed. R. Civ. P. 60(b)[4]. See Fisher v. Kadant, Inc., 589 F.3d 505, 512 (1st Cir. 2009) (noting a motion for reconsideration implicated either Fed. R. Civ. P. 59(e) or 60(b)).

"These two rules are distinct; they serve different purposes and produce different consequences. Which rule applies depends essentially on the time a motion is served. If a motion is served within [fourteen (14)] days of the rendition of judgment, the motion ordinarily will fall under Rule 59(e). If the motion is served after that time, it falls under Rule 60(b)." Pabon Rodriguez, 233 B.R. at 219, quoting Van Skiver, 952 F.2d at 1243.

"The substance of the motion, not the nomenclature used or labels placed on motions, is controlling." In re Lozada Rivera, 470 B.R. 109, 112–113 (Bankr. D.P.R. 2012). Thus, for example, even if filed within the time limit for a motion under Fed. R. Civ. P. 59(e), a motion seeking relief on grounds of "excusable neglect" will be treated as a Fed. R. Civ. P. 60(b)(1) motion, because Fed. R. Civ. P. 59(e) does not provide a vehicle for a party to undo its own

---

[4] Fed. R. Civ. P. 59(e) and 60(b)(1) are made applicable to adversary proceedings under Fed. R. Bankr. P. 9023 and 9024, respectively.

-17-

procedural failures. See In re Lozada Rivera, 470 B.R. at 113, citing 12–60 Moore's Federal Practice Civil § 60.03. Also see United States v. $23,000 in U.S. Currency, 356 F.3d 157, 164–165 (1st Cir. 2004) (even if timely filed under Fed. R. Civ. P. 59(e), a motion seeking relief on grounds of excusable neglect will be treated as Fed. R. Civ. P. 60(b)(1) motion, because Fed. R. Civ. P. 59(e) does not provide a vehicle for party to undo its own procedural failures); Jennings v. Rivers, 394 F.3d 850, 854–856 (10th Cir. 2005) (a motion timely filed under Fed. R. Civ. P. 59(e) but asserting ground for relief specified under Fed. R. Civ. P. 60(b), should be evaluated under standards applicable to Fed. R. Civ. P. 60(b) motions).

Fed. R. Civ. P. 59(e) authorizes the filing of a written motion to alter or amend a judgment after its entry. To meet the threshold requirements of a successful Fed. R. Civ. P. 59(e) motion, such motion must demonstrate the "reason why the court should reconsider its prior decision" and "must set forth facts or law of a strongly convincing nature" to induce the court to reverse its earlier decision. In re Schwartz, 409 B.R. 240, 250 (B.A.P. 1st Cir. 2008), citing Pabon Rodriguez, 233 B.R. at 218. See also Mujica, 470 B.R. at 254. For a motion for reconsideration to succeed, "the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." In re Redondo Constr. Corp., 2019 WL 6130938, at *3 (Bankr. D.P.R. 2019), aff'd, 621 B.R. 81 (D.P.R. 2020), quoting Mulero-Abreu v. P.R. Police Dep't, 675 F.3d 88, 94 (1st Cir. 2012). See also Pabon Rodriguez, 233 B.R. at 218; BBVA v. Vazquez (In re Vazquez), 471 B.R. 752, 760 (B.A.P. 1st Cir. 2012), citing Aybar v. Crispin–Reyes, 118 F.3d 10, 16 (1st Cir. 1997); In re Zutrau, 563 B.R. 431, 449 (B.A.P. 1st Cir. 2017), citing Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7, n. 2 (1st Cir. 2005), quoting Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146, n. 2 (1st Cir. 2004).

Federal courts have consistently stated that a motion for reconsideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources. See Pabon Rodriguez, 233 B.R. at 218. In practice, Fed. R. Civ. P. 59(e) motions are typically denied because of the narrow purposes for which they are intended. See id.; Global Naps, Inc. v. Verizon New England, Inc., 489 F.3d 13, 245 (1st Cir. 2007) (motions under Fed. R. Civ. P. 59(e) are reviewed for abuse of discretion, reversing only where "the original judgment evidenced a manifest error of law ... or in certain other narrow situations").

"A motion for reconsideration 'does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance arguments that could or should have been presented to the district court prior to the judgment." Redondo, 2019 WL 6130938 at *2, quoting Marks 3-Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc., 455 F.3d 7, 15-16 (1st Cir. 2006). When a party is made aware that a particular issue will be relevant to its case but fails to produce readily available evidence pertaining to that issue, the party may not introduce that evidence to support a Fed. R. Civ. P. 59(e) motion. See Pabon Rodriguez, 233 B.R. at 218. "Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." Redondo, 2019 WL 6130938 at *3, quoting Lepore v. Vidockler, 792 F. 2d 272, 274 (1st Cir. 1986). Neither can the party use this motion to raise novel legal theories that it had the ability to address in first instance. See Pabon Rodriguez, 233 B.R. at 218. A motion for reconsideration cannot be used as a vehicle to re-litigate matters already litigated and decided by the court. See Standard Química de Venezuela v. Central Hispano International, Inc., 189 F.R.D. 202, 205, n. 4 (D.P.R. 1999). A such, a party moving for Fed. R. Civ. P. 59(e) relief may not repeat arguments previously made, see Prescott v. Higgins, 538 F.3d 32, 45 (1st Cir. 2008), "rehash arguments previously rejected or … raise ones that 'could, and should, have been made before judgment issued." Soto-Padró v. Public Buildings Authority, 675 F.3d 1, 9 (1st Cir. 2012) (citations omitted). "[M]otions for reconsideration should not give parties a 'second bite at the apple' or 'another roll of the dice' ". Redondo, 2019 WL 6130938 at *2, quoting Conway v. A.I. DuPont Hosp. for Children, 2009 WL 1492178, at *4 (E.D. Pa. 2009). Also see In re Vazquez, 471 B.R. at 761("in denying reconsideration, the bankruptcy court correctly applied the First Circuit precedent against a second bite at the apple: litigants may not use Fed. R. Civ. P. 59(e) to advance arguments they could have made earlier"). "It is therefore exceedingly difficult for a litigant to succeed in a Fed. R. Civ. P. 59(e) motion." In re Mujica, 470 B.R. at 254, citing ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008).

Fed. R. Civ. P. 60(b) "attempts to balance the interest in the stability of judgments with the interest in seeing that judgments not become instruments of oppression and fraud." Alan N. Resnick and Henry J. Sommer, 10 Collier on Bankruptcy ¶ 9024.03 (16th ed. 2024). Hence, "the court may relieve a party from a final judgment, order, or proceeding" for:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)-(6).

In Pioneer, the U.S. Supreme Court ruled that the determination of what constitutes "excusable neglect" is an equitable one, taking into consideration the following factors: (1) the length of the delay and its potential impact on judicial proceedings; (2) the reason for the delay, including whether it was within the reasonable control of the movant; (3) whether the movant acted in good faith; and (4) whether granting the relief will prejudice the opposing party. Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 395 (1993). The Supreme Court concluded that "excusable neglect" is a flexible concept that is not limited to circumstances beyond the control of the movant. Id., at 388. The U.S. Court of Appeals for the First Circuit (the "First Circuit") incorporated the Pioneer doctrine in Pratt v. Philbrook, 109 F.3d 18 (1st Cir. 1997), and has sustained it ever since. See e.g., United States v. Union Bank for Sav. & Inv. (Jordan), 487 F.3d 8, 24 (1st Cir. 2007); Aja v. Fitzgerald (In re Aja), 441 B.R. 173, 177 (1st Cir. BAP 2011) (upholding the Pioneer test).

The most important factor in this test is the reason for the delay, which requires a statement of the reasons and a satisfactory explanation for the delay. See Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc., 270 F.3d 1, 6 (1st Cir. 2001); EnvisioNet Computer Servs., Inc. v. ECS Funding LLC, 288 B.R. 163, 166 (D.Me. 2002). No "excusable neglect" can be determined in the absence of unique or extraordinary circumstances. Fisher, 589 F.3d at 512; Haddock–Rivera v. ASUME, 486 B.R. 574, 578 (1st Cir. BAP 2013), citing Morse v. Earle (In re Earle), 2008 Bankr. LEXIS 3961, 2008 WL 8664763 (1st Cir. BAP 2008). "The trial court has wide discretion to determine the existence of neglect or lack thereof and whether it was excusable or not." In re Lozada Rivera, 470 B.R. at 114, citing Graphic Communications, 270 F.3d at 6-7; $23,000 in U.S. Currency, 356 F.3d at 165 ("[Trial] courts enjoy considerable discretion in

deciding motions brought under Civil Rule 60(b)"), and <u>In re Shepherds Hill Development Co.</u>, 316 B.R. 406, 418 (1st Cir. BAP 2004).

(B)      <u>Due Process and Notice Requirements</u>

Lack of due notice is grounds to set aside an order. <u>See</u> <u>e.g.</u>, <u>United Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260, 271 (2010); <u>In re Auto Master Express, Inc.</u>, 2021 WL 2020293, 2021 Bankr. LEXIS 1360 (Bankr. D.P.R. 2021).

Section 342 of the Bankruptcy Code establishes the requisite notice for parties affected by a debtor's bankruptcy by providing that "[t]here shall be given such notice as is appropriate, including notice to any holder of any community claim, of an order for relief in a case under this title." 11 U.S.C. § 342(a). To ensure that adequate notice is provided to creditors pursuant to Section 342(a), Section 521(a)(1) and Fed. R. Bankr. P. 1007(a)(1) require a debtor to file with the petition "a list containing the name and address of each entity included or to be included on Schedules D, E//F, G, and H as prescribed by the Official Forms." Fed. R. Bankr. P. 1007(a)(1). <u>See also</u> PR LBR 1007-1(a); 11 U.S.C. § 521(a). "The purpose of statutorily requiring a debtor to list its creditors with their mailing addresses is to provide them with basic due process notice." <u>In re TEMSCO NC Inc.</u>, 537 B.R. 108, 120 (Bankr. D.P.R. 2015), citing <u>In re Glenwood Medical Group, Ltd.</u>, 211 B.R. 282, 285 (Bankr. N.D.Ill. 1997). <u>See also</u> 11 U.S.C. §§ 363 (sale of estate property notice requirement), 364(d)(1) (DIP financing notice requirement).

Section 342(f), (g) of the Bankruptcy Code, 11 U.S.C. § 342 provides, in relevant part:

(f)(1) An entity may file with any bankruptcy court a notice of address to be used by all the bankruptcy courts or by particular bankruptcy courts … to provide notice to such entity in all cases under chapters 7 and 13 pending in the courts with respect to which such notice is filed, in which such entity is a creditor.

(2) In any case filed under chapter 7 or 13, any notice required to be provided by a court … shall be provided to such address unless with respect to a particular case a different address is specified …

(g)(1) <u>Notice</u> provided to a creditor by the debtor or the court other than in accordance with this section (excluding this subsection) <u>shall not be effective notice until such notice is brought to the attention of such creditor</u>. If such creditor designates a person or an organizational subdivision of such creditor to be responsible for receiving notices under this title and establishes reasonable procedures so that such notices receivable by such creditor are to be delivered to such person or such subdivision, then a <u>notice provided to such creditor</u> *other than*

-21-

> *in accordance with this section* (excluding this subsection) <u>shall not be considered to have been brought to the attention of such creditor until such notice is received by such person or such subdivision.</u>

11 U.S.C. § 342 (f)-(g). "When notice of a preferred address has been filed under Section 342(f)(1), the clerk is mandated under Section 342(f)(2) to provide notices to that entity at that address." <u>In re Parker</u>, 519 B.R. 884, 887 (Bankr. D.D.C. 2014)[5].

To implement Section 342(f), courts utilize the NCRS. "A National Creditor Registration Service has been established to handle most aspects of the new statutory and federal rule noticing requirements under 11 U.S.C. §§ 342 (e) and (f)." U.S. Bankruptcy Court for the District of Puerto Rico, *The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA)*, https://www.prb.uscourts.gov/?q=bankruptcy-abuse-prevention-and-consumer-protection-act-2005-bapcpa (viewed on April 16, 2024). <u>See also</u> U.S. Courts, *Bankruptcy Noticing*, https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-noticing (viewed on April 16, 2024). As noted on the NCRS website, "the [NCRS] is a free service provided by the U.S. Bankruptcy Courts to give recipients more convenient delivery options for their bankruptcy notices." Bankruptcy Noticing Center, *Electronic Bankruptcy Noticing and Preferred Mailing Address Registration*, https://bankruptcynotices.uscourts.gov (viewed on April 16, 2024).

In connection with the filing of a notice of preferred address, Fed. R. Bankr. P. 2002(g) states, in relevant part:

> (1) In General. A notice mailed to a creditor … ***must*** be addressed as the entity or its authorized agent provided in its ***last request filed in the case*** …

> (2) When No Request Has Been Filed. Except as § 342(f) provides otherwise, if a creditor … has not filed a request under [Fed. R. Bankr. P. 2002(g)](1) or Rule 5003(e), the notice must be mailed to the address shown on the list of creditors or schedule of liabilities, whichever is filed later.

> …

---

[5] In <u>Parker</u>, a Chapter 7 debtor filed a complaint to recover damages on account of the Small Business Administration's ("SBA") alleged willful violation of the automatic stay. The SBA moved for judgment in its favor, averring that the notice sent by the clerk to the e-mail address to which the SBA had requested that notices be sent was incorrect. The U.S. Bankruptcy Court for the District of Columbia held that the SBA failed to establish compliance with Fed. R. Bankr. P. 2002(g)(5) and, consequently, that notice was ineffective pursuant to Section 342(g)(1), such that the SBA was entitled to protection under Section 342(g)(2) (which states that a monetary penalty may not be imposed for a stay violation unless notice was effective).

(5) When a Notice Is Not Brought to a Creditor's Attention. A creditor may treat a notice as not having been brought to the creditor's attention under § 342(g)(1) only if, before the notice was issued, the creditor has filed a statement:

(A) designating the name and address of the person or organizational subdivision responsible for receiving notices; and

(B) describing the creditor's procedures for delivering notices to the designated person or organizational subdivision.

Fed. R. Bankr. P. 2002(g) (emphasis added). PR LBR 2002-2 adds as follows:

(a) Notice. ***The filing of a notice of preferred address pursuant to 11 U.S.C. § 342(f) by a creditor*** directly with the entity that provides noticing services for the bankruptcy courts ***will constitute the filing of such a notice with the court***.

(b) Registration. Registration with the National Creditor Registration Service must be accomplished through the entity that provides noticing services for the bankruptcy courts. […]

(c) Conclusive Presumption. Any notice sent by the court to a creditor's preferred address, in accordance with a notice of preferred address filed by a creditor … pursuant to 11 U.S.C. § 342(e) or § 342(f) … specifying a mailing address and designating a recipient, will be conclusively presumed to have been received by the creditor or interested party upon the mailing of any notice by the court or its noticing agent(s) to the address specified in the notice of preferred address, notwithstanding 11 U.S.C. § 342(g)(1).

PR LBR 2002-2 (emphasis added).

The Federal Rules of Bankruptcy Procedure further specify that known creditors must receive: (1) notice of deadlines for filing proofs of claims (bar date) (Fed. R. Bankr. P. 2002(a)(7)); (2) a copy of the reorganization plan (Fed. R. Bankr. P. 3017(d)); (3) notice of the confirmation hearing (Fed. R. Bankr. P. 3017(d)); and (4) the confirmation order (Fed. R. Bankr. P. 2002(f)). See Paging Network, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.), 534 F.3d 76, 82 (1st Cir. 2008).

It is the debtor's burden to establish that the creditor received adequate notice. See e.g., TEMSCO, 537 B.R. at 120, quoting In re O'Sullivan, 488 B.R. 510, 513 (Bankr. D. Mass. 2013), quoting In re Massa, 187 F.3d 292, 296 (2nd Cir. 1999). "If a creditor does not receive reasonable notice of a bankruptcy case and the particular bar dates, then its claim cannot be constitutionally discharged." Id., citing In re O'Shaughnessy, 252 B.R. 722, 729 (Bankr. N.D.Ill. 2000), citing In

-23-

re Longardner & Associates, Inc., 855 F.2d 455, 465 (7th Cir. 1988), *cert. denied*, 489 U.S. 1015 (1989).

(C)    Motion to Dismiss Standard under Fed. R. Civ. P. 12(b)(1)

When faced with motions to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6), "a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995), citing 5A Charles Wright & Arthur Miller, Federal Practice and Procedure § 1350, at 210 (1990); Bell v. Hood, 327 U.S. 678, 682 (1945) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.").

Pursuant Fed. R. Civ. P. 12(b)(1), made applicable to adversary proceedings under Fed. R. Bankr. P. 7012, a party may request the dismissal of a complaint for "lack of subject matter jurisdiction." "This rule is a large umbrella, overspreading a variety of different types of challenges to subject matter jurisdiction. Some challenges—those grounded in considerations of ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction are good examples." Valentin v. Hosp. Bella Vista, 254 F. 3d 358 (1st Cir. 2001), referencing Ernst & Young v. Depositors Econ. Prot. Corp., 45 F. 3d 530, 534 (1st Cir. 1995) (ripeness). "Therefore, ripeness is a component of subject matter jurisdiction that may be challenged under Fed. R. Civ. P. 12(b)(1). The plaintiff, as the party asserting subject matter jurisdiction, has the burden of establishing both standing and ripeness." In re Gonzalez Maldonado, 610 B.R. 49, 54 (Bankr. D.P.R. 2019), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

"The pleading standard for satisfying the factual predicates for proving jurisdiction is the same as applies under [Fed. R. Civ. P.] 12(b)(6) — that is, the plaintiffs must 'state a claim to relief that is plausible on its face." Labor Rels. Div. of Constr. Indus. Of Mass. V. Healey, 844 F. 3d 318, 326 (1st Cir. 2016), quoting Román Oliveras v. P.R. Elec. Power Auth., 655 F. 3d 43, 45 n. 3, 49 (1st Cir. 2011), and Silha v. ACT, Inc., 807 F. 3d 169, 174 (7th Cir. 2015) (collecting cases from other circuits).

(D)    The Doctrine of Ripeness

-24-

The purpose of the doctrine of ripeness is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Ernst & Young, 45 F. 3d at 535, citing Abbott Labs. V. Gardner, 387 U.S. 136, 148-149 (1967). "While the doctrine has a prudential flavor, a test for ripeness is also mandated by the constitutional requirement that federal jurisdiction extends only to actual cases or controversies, see U.S. Const. art III, § 2; see also [Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237,] 242-45, 73 S.Ct. 236." Id.

The ripeness doctrine seeks to prevent the adjudication of claims relating to "contingent future events that may not occur as anticipated, or indeed may not occur at all." Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017), quoting Texas v. United States, 523 U.S. 296, 300 (1998). "[T]he facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of" the judicial relief requested. Healey, 844 F. 3d at 326, quoting MedImmune, Inc. v. Genentech Inc., 549 U.S. 118, 127 (2007).

To determine whether a case is ripe for review, the plaintiff must adduce facts sufficient to establish both fitness and hardship. See Ernst & Young, 45 F. 3d at 535. Under the fitness prong of the ripeness test, a claim is ripe for judicial review if the same does not rest "… upon continent events that may not occur as anticipated, or indeed may not occur at all." Healey, 844 F. 3d at 326, quoting City of Fall River v. FERC, 507 F. 3d 1, 6 (1st Cir. 2007). "Put bluntly, the question of fitness does not pivot solely on whether a court is capable of resolving a claim intelligently, but also involves an assessment of whether it is appropriate for the court to undertake the task. Federal courts cannot --- and should not—spend their scarce resources in what amounts to shadow boxing. Thus, if a plaintiff's claim, though predominantly legal in character, depends upon future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe." Ernst & Young, 45 F. 3d at 537 (citations omitted).

"The fact that an event has not occurred can be counterbalanced in this analysis by the fact that a case turns on legal issues 'not likely to be significantly affected by further factual development.' " McInnis-Misenor v. Me. Med. Ctr., 319 F. 3d 63, 70 (1st Cir. 2003), quoting Ernst & Young, 45 F. 3d at 536. However, if the claims are of a conditional nature, then a finding of

hardship is unlikely. Under the hardship prong, the court considers whether "...the challenged action creates a direct and immediate dilemma for the parties." Ernst & Young, 45 F. 3d at 535.

"The First Circuit has also stated that although both prongs of the test must be satisfied, 'a strong showing on one may compensate for a weak one on the other." Resurgent Capital Servs., L.P. v. Harrington (In re Cushman), 2017 WL 818254, at *4, 2017 Bankr. LEXIS 575, at *11 (Bankr. D. Me. 2017), quoting McInnis-Misenor, 319 F. 3d at 70. Moreover, " '[i]n ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. In addition, the court may consider whatever evidence has been submitted…" Portland Pipe Line Corp. v. City of South Portland, 164 F. Supp. 3d 157, 173-74 (D. Me. 2016). See also Gonzalez v. U.S., 284 F. 3d 281, 288 (1st Cir. 2002). In view of the authority referenced above, the Court may consider the numerous exhibits attached to the complaint and motion.' " Riley v. Lexmar Global Inc. (In re Progression, Inc.), 559 B.R. 8, 10-11 (Bankr. D. Mass. 2016).

(E)     The Younger Abstention Doctrine

In Younger v. Harris, 401 U.S. 37 (1971), the U.S. Supreme Court ruled that federal courts must defer to ongoing state criminal proceedings. Under Younger's progeny, the U.S. Supreme Court has "recognized that the policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 518 (1st Cir. 2008), quoting Middlesex Cty. Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (internal quotation omitted). That is to say, "the Younger doctrine has been extended to coercive civil cases involving the state and to comparable state administrative proceedings that are quasi-judicial in character and implicate important state interests." Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 31 (1st Cir. 2004). Thus, federal courts now apply the Younger abstention doctrine to ongoing state civil or administrative proceedings where these proceedings satisfy three conditions: "(1) the proceedings are judicial (as opposed to legislative) in nature; (2) they implicate important state interests; and (3) they provide an adequate opportunity to raise federal constitutional challenges." Id.; See also Molinelli-Freytes v. Univ. of Puerto Rico, 2011 WL 13209627, at *6 (D.P.R. 2011).

"Generally, insofar as the state proceedings [which meet these conditions] evince no showing of bad faith, harassment, or some other extraordinary circumstances that would make abstention inappropriate, the federal courts should abstain." Esso Standard Oil Co. v. Lopez-Freytes, 522 F.3d 136, 143 (1st Cir. 2008).

(F)     Motion to Dismiss Standard under Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) is made applicable to adversary proceedings through Fed. R. Bankr. P. 7012. In deciding a motion under Fed. R. Civ. P. 12(b)(6), the court must determine whether a complaint states a plausible claim. "The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." In re Instituto Medico del Norte, Inc., 2021 WL 4944085, at *2, 2021 Bankr. LEXIS 2924, at *7 (Bankr. D.P.R. 2021); Lugo Alejandro v. Betancourt (In re Betancourt), 2021 WL 438858, 2021 Bankr. LEXIS 298 (Bankr. D.P.R. 2021); Vélez Arcay v. Banco Santander de P.R. (In re Vélez Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir. 1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita-Acosta v. Reparto Saman Inc. (In re Surita Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id., at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the First Circuit established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. See Pérez v. Rivera (In re Pérez), 2013 WL 1405747, at *3, 2013 Bankr. LEXIS 1561 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012).

"Simply because the court is hesitant to dismiss a claim in the early sta[g]es of litigation, however, does not mean that there are not circumstances where the court can and should act. Fed. R. Civ. P. 12(b)(6) weeds out those allegations that, even with further factual development, will never grow into sustainable claims under the law." Arruda v. Sears, Roebuck & Co., 273 B.R. 332, 340 (D.R.I. 2002). As the First Circuit has stated, "in the menagerie of the Civil Rules, the tiger patrolling the courthouse gates is rather tame, but 'not entirely ... toothless.' " Correa v. Arrillaga, 903 F.2d 49, 52 (1st Cir. 1990), quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

Consideration of a motion to dismiss requires the court to assume the truth of all well-plead facts and give the benefit of all reasonable inferences therefrom. A complaint that states a claim plausible on its face survives a motion to dismiss. See Banco Santander P.R. v. P.R. Hosp. Supply, Inc. (In re P.R. Hosp. Supply, Inc.), 617 B.R. 181, 191 (Bankr. D.P.R. 2020).

(G)     Discussion

As an introductory matter, Debtor-Plainti/ff's motion for reconsideration sought relief on grounds of "excusable neglect" under Fed. R. Civ. P. 60(b)(1), and this court so found. See *Audio File of October 26, 2023, Hearing* at 1:23:40 to 1:24:14, Lead Case, Docket No. 59 (finding excusable neglect). Consequently, Bosco's *Motion for Relief from Confirmation Order* (Lead Case, Docket No. 42), which sought relief under Fed. R. Civ. P. 60(b)(6) on due process grounds, will be reviewed on the merits.

With respect to the issue of notice, this court treats registration with the NCRS as a filing under 11 U.S.C. § 342(f)-(g), and Fed. R. Bankr. P. 2002(g). See PR LBR 2002-2. See also In re Parker, 519 B.R. at 886-887 (noting that "it appears that the bankruptcy courts uniformly direct creditors to the National Creditor Registration Service when creditors wish to give notice of a preferred address … In effect, the bankruptcy courts treat the NCRS as accepting filings of notices under § 342(f)(1) on behalf of the bankruptcy courts."). In accordance with Fed. R. Bankr. P. 2002(g)(1), a notice mailed to a Bosco "must" be addressed as the entity or its authorized agent provided in its *last request filed in the case*, that is, to its preferred mailing address in New Jersey.

The record reflects that Franklin, servicer for Bosco, has a preferred mailing address in New Jersey so filed with the NCRS pursuant to Section 342(f) and PR LBR 2002-2(a). See Lead Case, Docket Nos. 42-4, 52-1. The record further reflects that the certificate of service of the notice of Debtor-Plaintiff's bankruptcy petition (Lead Case, Docket No. 7) and the notice of the confirmation hearing (Lead Case, Docket Nos. 7, 13) were noticed to Franklin, servicer for Bosco, at "PO BOX 829629, Philadelphia, PA 19182-9629". The certificate of service of the confirmation order (Lead Case, Docket No. 37) was not noticed on Franklin, servicer for Bosco, to any address. Ms. D'Elia, Franklin's Bankruptcy Manager, testified that Franklin did not receive notice of the bankruptcy proceeding to its preferred mailing address in New Jersey, or to its Philadelphia lockbox address. This court is not persuaded by the Debtor-Plaintiff's arguments to the contrary.

To the extent notice was not addressed to Franklin's preferred mailing address in New Jersey, notice was not effective and Bosco may treat notice as not having been brought to its attention under Section 342(g)(1) pursuant to Fed. R. Bankr. P. 2002(g)(5), and PR LBR 2002-2. Consequently, the confirmed plan is not binding on Bosco and the debt (assuming, *arguendo*, that there is a debt owed), cannot be discharged. Therefore, Bosco's *Motion for Relief from*

*Confirmation Order* (Lead Case, Docket No. 42) is hereby granted on the merits. The confirmed plan is not binding on Bosco as effective due notice was not given.

Having addressed the issue of notice, this court will address the issue of Bosco's lien over the Property and whether this court has subject matter jurisdiction, the issue is ripe for adjudication, and whether this court should abstain. As stated above, there is a dispute as to whether Bosco has a valid lien over the Property because the Security Agreement and the Purchase Deed presented in the PR Property Registry, were notified as containing defects by the Registrar, subsequently withdrawn and presented for a second time <u>uncorrected</u>. In connection therewith, the parties contest whether this court has subject matter jurisdiction, whether the contested issue is ripe for adjudication, and whether this court should abstain.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). See *e.g.*, <u>Ortiz Betancourt</u>, 2023 WL 4675760 at *5. Fed. R. Bankr. P. 7001(2) requires the commencement of an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr. P. 7001(2). "The debtor must file an adversary proceeding if the debtor intends to extinguish or modify a lien or other interest in property." <u>In re Diaz</u>, 2021 WL 3625816, at *11 (Bankr. D.P.R. 2021) (citation omitted). Fed. R. Bankr. P. 7001(9) likewise requires the commencement of an adversary proceeding to obtain a declaratory judgment relating to the forgoing. Moreover, this court finds that the issue of whether Bosco has a valid lien over the Debtor's real property and, consequently, whether the Security Agreement and the Purchase Deed contain defects is ripe for adjudication. Mandatory abstention is not appropriate as there is no ongoing state or administrative proceeding.

Notwithstanding, the defects that allegedly prevent recordation are not identified in any of the allegations or documents attached to Debtor-Plaintiff's second *Amended Complaint* (Adv. Proc. Docket No. 40). Consequently, Debtor-Plaintiff has failed to plead specific facts to make a determination as to the validity, priority, or extent of Bosco's lien. Allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". <u>Peñalbert-Rosa</u>, 631 F.3d at 595. Moreover, the *Certification of Real Estate Property* issued by the Digital Real Estate Registry of the Commonwealth of Puerto Rico, dated February 16, 2022 (<u>Exhibit A</u>,

-30-

Lead Case, Docket No. 42-1, p, 3), of which the court takes judicial notice of pursuant to Fed. R. Evid. 201[6], evinces that a Segregation, Release and Sale Deed No. 164 and Mortgage Deed No. 165 with Scotiabank, Bosco's predecessor in interest, were presented on June 6, 2012, and are pending recordation at Entry No. 1102 and 1103. Debtor-Plaintiff has failed to plead that such certification is defective or to submit a certification from the Registrar that counters Bosco's position or that otherwise evinces a notice of defect. Consequently, the court finds that Debtor-Plaintiff fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

CONCLUSION

For the reasons stated herein, the *Motion for Reconsideration* (Lead Case, Docket No. 45) is DENIED. To the extent notice was not addressed to Franklin's preferred mailing address in New Jersey, notice was not effective and Bosco may treat notice as not having been brought to its attention under Section 342(g)(1) pursuant to Fed. R. Bankr. P. 2002(g)(5), and PR LBR 2002-2. Consequently, the confirmed plan is not binding on Bosco and the debt (assuming, *arguendo*, that there is a debt owed), cannot be discharged.

The *Partial Motion to Dismiss* (Adv. Proc. Docket No. 85) is hereby GRANTED and, consequently, Count I of the *Amended Complaint* (Adv. Proc. Docket No. 40) is dismissed.

Partial judgment to be entered.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of April 2024.

Enrique S. Lamoutte
United States Bankruptcy Judge

---

[6] The extent to which a court may consider extrinsic evidence outside the four corners of the complaint depends upon whether that record, or the facts within it, are susceptible to judicial notice under Fed. R. Evid. 201. See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citations omitted) ("Under certain 'narrow exceptions,' some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment. These exceptions include 'documents the authenticity of which are not disputed by the parties; ... official public records; ... documents central to plaintiffs' claim; [and] ... documents sufficiently referred to in the complaint.' "). The *Certification of Real Estate Property* fits into these enumerated categories.